**WAKEFIELD WATER COMPANY**

v.

**Edward F. BURKE et al.**

**No. 84–440–M.P.**

Supreme Court of Rhode Island.

Jan. 7, 1986.

---

John G. Coffey, Jr., Coffey, McGovern, Noel & Neal, Providence, for plaintiff.

Arlene Violet, Atty. Gen., Sheldon White-house, Sp. Asst. Atty. Gen., for defendant.

OPINION

SHEA, Justice.

This matter is before the Supreme Court on a statutory petition for a writ of certiorari filed by the Wakefield Water Company (Wakefield) to review the legality and reasonableness of a decision and order of the Public Utilities Commission (commission) in docket No. 1734 and its order No. 11347 issued pursuant thereto. We deny and dismiss the petition.

On December 7, 1983, petitioner, Wakefield, filed an application with the commission seeking an across-the-board increase in revenues in the amount of $359,802, or 36 percent over current revenues, and proposed tariffs implementing the increase. The request was based on operations during a test period consisting of the twelve months ending September 30, 1983.

The commission on its own motion suspended the effective date of the tariff until September 6, 1984. On September 5, 1984, after public hearings had been held, the commission entered a report and order discussing the substantive issues and allowing an increase in annual revenues of $149,824 or 42 percent of Wakefield's original request. The commission further ordered Wakefield to file with the commission within thirty days of the order a new tariff that would provide additional revenue on an across-the-board basis in the approximate amount of the increase approved. Wakefield complied with this order and a compliance hearing was held by the commission. On October 17, 1984, the commission issued its report and order approving the compliance tariffs filed by Wakefield, which would affect the cost of water consumption by Wakefield customers on and after October 17, 1984.

Wakefield filed a motion for reconsideration and modification of the October 17,

1984 order, requesting that the compliance tariff be effective as of August 30, 1984, a date ninety days after the last hearing pursuant to G.L.1956 (1984 Reenactment) § 39–3–11. The commission, however, in an order dated November 21, 1984, rejected Wakefield's request but modified the compliance order of October 17, 1984, to allow an effective date for the rate increase as of September 5, 1984.

Section 39–3–11 provides in pertinent part that

"[w]ithin ninety (90) days after the completion of any such hearing, the commission shall make such order in reference to any proposed rate, toll or charge as may be proper."

The Division of Public Utilities and Carriers and the Department of the Attorney General filed a motion for relief from the commission's November 21, 1984 order requesting that the new rates not become effective until thirty days after a compliance order is issued or, alternatively, thirty days after September 5, 1984, the date the commission authorized the rate increase, pursuant to § 39–3–11.

Section 39–3–11 further provides in pertinent part that

"[n]o change shall be made in the rates, tolls and charges which have been filed and published by any public utility in compliance with the requirements of § 39–3–10, except after thirty (30) days' notice to the commission and to the public published as aforesaid, which shall plainly state the charges proposed to be made in the schedule then in force, and the time when the changed rates, tolls or charges will go into effect."

The commission issued a written order on March 25, 1985, denying the motion for relief and refused to modify its order that set forth the effective date for the rate increase.

After Wakefield filed its petition for a writ of certiorari we granted its motion for leave to file a supplemental brief.

■ Wakefield raises four issues, each of which we shall address. We first turn to the question of the propriety of the commission's treatment of Wakefield for income tax purposes. The commission treated Wakefield on a stand-alone basis for purposes of the graduated income tax rates and imputed the capital structure of the parent corporation to Wakefield. The commission then made its computation of income tax adjustment based on the full amount of income subject to the graduated rates under 26 U.S.C.A. § 11(b) (1984).

In *Wakefield Water Co. v. Public Utilities Commission,* —— R.I. ——, 457 A.2d 251 (1983), Wakefield had petitioned this court for certiorari on this specific issue. In our decision, we specifically affirmed the stand-alone treatment of Wakefield for purposes of this "surtax exemption." We are unable to find any distinguishing facts in this case, therefore, this issue is settled.

■ Wakefield's next contention is that the commission erred in not awarding it the costs related to the appeal of the commission's order. The appeal in issue concerned the commission's treatment of the federal income tax exemption. The amount expended on appeal was $20,097, which would be amortized over a two-year period at a rate of $10,048 per year.

In an earlier appeal to the commission, docket No. 1547, in which Wakefield was a party, the same issue was involved. At that time the commission clearly enunciated the standard it would use in the future to determine whether such litigation costs should be considered an appropriate operating expense and thus recoverable. In denying Wakefield's present request for their costs of appeal, the commission reiterated those standards set forth in docket No. 1547.

"regulatory expenses should be treated as any other expense comprising a utility's cost of service. So long as the expense in question is reasonable in amount and incurred in good faith, with-

out fraud or other illegality, the utility should be entitled to be reimbursed."

The commission went on to reiterate that "[t]he Commission is very much concerned with the amount of regulatory expense which in the last analysis must be borne by the rate payer. Rate filings are costly proceedings. The Commission believes that all expenses incurred in connection therewith must be carefully scrutinized."

The commission, in the earlier appeal involving Wakefield, determined that on the record it was unable to conclude whether the prior rate-case expenses were imprudently or improperly incurred. To aid in future cases, the commission stated, in allowing recovery of the appeal costs sought, the commission

"gives notice that such expenses in future rate filings will be carefully considered in detail and *affirmative evidence of the extent of such services and the value thereof will be required,* having in mind again the impact on the rate payer."

This record is devoid of any "affirmative evidence of the extent of such services and the value thereof." The commission, having given explicit notice to Wakefield in docket No. 1547 of the facts and information necessary to support a claim for such expenses and having not received any of the requisite information, refrained from considering whether reimbursement for taking the appeal was recoverable. Instead, the commission disallowed the claim for $10,048 per year for two years, the amount represented by the cost of the appeal.

In this case the commission said that any future claim for regulatory expense by Wakefield shall be accompanied by a detailed breakdown of the number of hours expended by individuals, the dates of service, the nature of the services indicating its necessity, and evidence about the reasonableness of such rate. The commission expressed its concern that Wakefield "has seen fit to be represented at some of these proceedings by not one but two experienced and able legal counsel. It is precisely this type of expenditure as to which we request justification."

The commission has broad power to establish and enforce reasonable rules that will aid in the administration and enforcement of its statutory duties. *See* G.L.1956 (1984 Reenactment) §§ 39-1-1(2), 39-1-11, and 39-3-33. The commission in docket No. 1547 established just such a reasonable rule, designed to aid in the determination of certain issues that have faced the commission with some regularity. These rules are reasonable on their face and will aid both utilities and the commission in determining whether certain appeal costs may be recoverable as a cost of doing business.

In the present matter, Wakefield, a party to the previous action in docket No. 1547, was fully aware of the commission's ruling and the requirements. Wakefield failed to present any evidence on any of the requirements set forth by the commission. Consequently, Wakefield's claim for reimbursement of its rate-case expenses was properly disallowed.

Wakefield also asserts that the commission erred in not issuing a rate order within ninety days of the completion of its public evidentiary rate hearings pursuant to § 39-3-11. The last public rate hearing was held by the commission on June 1, 1984. Wakefield had proposed in its compliance tariff, filed pursuant to the commission's rate award, that rates should be effective as of August 30, 1984, which is ninety days after the last public evidentiary rate hearing. Despite this recommendation the commission's March 25, 1985 order set September 5, 1984, as the tariff's effective date.

In its order dated November 21, 1984, the commission disagreed with Wakefield's conclusion that the hearing in docket No. 1734 was completed on June 1, 1984. The commission held that the hearing in this matter was completed on July 5, 1984, when the record of docket No. 1734 was closed by the filing of the parties' briefs.

This determination was based on Rule 1.17(a)(10) of the Commission Rules of Practice and Procedure adopted June 20, 1980, which reads in pertinent part as follows:

"The record in a proceeding shall close after the filing of briefs by parties and thereafter there shall not be received in evidence or considered as part of the record any document, letter or other evidence submitted."

The commission then concluded that the ninety-day requirement was not violated in that its report and order in docket No. 1734 was issued on September 5, 1984, only sixty-two days after the closing of the record.

The commission correctly stated that the issue of when a hearing is completed was not raised, not decided and expressly left open by this court in *Bristol County Water Co. v. Public Utilities Commission,* 117 R.I. 89, 363 A.2d 444 (1976). The commission reasoned that its administrative rule defined the formal completion of a hearing so as clearly to inform all parties of the event that triggers the beginning of the ninety-day statutory period.

In reviewing a decision and order of the commission, this court will consider the fairness and reasonableness of the commission's actions, not the methodology by which that decision was reached. *South County Gas Co. v. Burke,* —— R.I. ——, 486 A.2d 606 (1985). When confronted with an order or judgment of the commission made in the exercise of administrative discretion, we will reverse only when the commission exceeded its authority or acted illegally, arbitrarily, or unreasonably. General Laws 1956 (1984 Reenactment) § 39-5-3.

We find that the commission acted well within its authority in adopting and implementing Rule 1.17(a)(10). This rule clearly identifies the time at which a public hearing is deemed to be closed as that moment when the briefs are filed. Briefs in this matter were filed on July 3 and 5, 1984. The commission established the effective date of the rate increase as September 5, 1984, which is well within the ninety-day period established in § 39-3-11. The commission did not exceed its authority, nor did it act illegally, arbitrarily, or unreasonably in its decision.

The last issue facing us is the question of when an approved rate increase will take effect. This same issue was first addressed by this court in *Providence Gas Co. v. Burke,* —— R.I. ——, 475 A.2d 193 (1984), in which we stated that the consumer cannot "be billed for energy consumed prior to the commission's action at a rate not in effect until after its decision." *Id.* at ——, 475 A.2d at 197. We noted that "[o]ne of the central principles of rate making is that rates must be prospective." *Id.* Such application is necessary so that the consumer is afforded an opportunity to adjust his or her usage patterns prior to the time that the new rates affect the cost of services used by them.

The commission correctly read our decision in *Providence Gas Co.* as only requiring that approved rate increases be effective for services used on and after the date the new rates were authorized. It is the responsibility of Wakefield to devise a billing system that will effectuate this decision. A company's difficulties arising out of compliance with decisions of the commission and this court are not a basis for an exemption from the ruling. It is Wakefield's responsibility to devise a means of implementing the rate increase that is consistent with our rules against retroactive rate making.

The petition for certiorari is hereby denied. The writ heretofore issued is quashed. The papers of the case are remanded to the Public Utilities Commission with our decision endorsed thereon.